```
 1                  IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                        CORPUS CHRISTI DIVISION

 3
    UNITED STATES OF AMERICA,         *    CRIMINAL ACTION
 4                                    *
            PLAINTIFF,                *    CR-C-07-454(4)
 5                                    *
    VS.                               *
 6                                    *
    AARON KEITER,                     *    CORPUS CHRISTI, TEXAS
 7                                    *    APRIL 7, 2011
            DEFENDANT.                *    10:16 A.M.
 8                                    *
    * * * * * * * * * * * * * * * * * *
 9
10                       TRANSCRIPT OF SENTENCING

11                BEFORE THE HONORABLE JANIS GRAHAM JACK
                       UNITED STATES DISTRICT JUDGE
12

13  APPEARANCES:

14  FOR THE GOVERNMENT:       MS. PATTI HUBERT BOOTH
                              OFFICE OF THE U.S. ATTORNEY
15                            800 NORTH SHORELINE, SUITE 500
                              CORPUS CHRISTI, TEXAS 78401
16
    FOR THE DEFENDANT:        MR. JOSEPH RONALD BARROSO
17                            ATTORNEY AT LAW
                              5350 SOUTH STAPLES, SUITE 401
18                            CORPUS CHRISTI, TEXAS 78411

19  ALSO PRESENT:             MS. CATHI VOLKMANN, U.S. PROBATION

20
    COURT RECORDER:           MS. VELMA GANO
21

22
         PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
23          TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
                   MOLLY CARTER, P. O. BOX 270203
24           CORPUS CHRISTI, TEXAS 78427 (361) 945-2525

25
```

```
 1            (The proceedings began at 10:16 a.m.)
 2            (Call to Order of the Court.)
 3            THE CLERK:  Court calls Criminal Action C-07-454,
 4   Defendant 4, United States of America versus Aaron Keiter.  May
 5   I have appearances, please?
 6            MS. BOOTH:  Patti Hubert Booth for the United States.
 7            MR. BARROSO:  Ron Barroso on behalf of Mr. Keiter.
 8            (Defendant sworn.)
 9            THE COURT:  Your full name, please, sir?
10            THE DEFENDANT:  Aaron Keiter.
11            THE COURT:  Are you the same Aaron Keiter who entered
12   a guilty plea to Count 1 of this -- Count 4 of this indictment,
13   conspiracy to launder monetary instruments?
14            THE DEFENDANT:  Yes, I have, Your Honor.
15            THE COURT:  Are you ready for sentencing?
16            THE DEFENDANT:  Yes, I am, Your Honor.
17            THE COURT:  Has anything changed in your mental or
18   physical condition since you entered your plea?
19            THE DEFENDANT:  Still under the same medication and
20   treatment that I've been undergoing, Your Honor.
21            THE COURT:  Okay.  Are you clear-headed today?
22            THE DEFENDANT:  Yes, I am, Your Honor.
23            THE COURT:  Do you still think you're mentally
24   competent to proceed as you were at the time of your plea?
25            THE DEFENDANT:  Yes, I do, Your Honor.
```

```
 1                 THE COURT:  Do you agree with that, Mr. Barroso?
 2                 MR. BARROSO:  I do, Your Honor.
 3                 THE COURT:  Have you received a copy of your
 4    Presentence Investigation Report, had it for at least 35 days,
 5    and read it completely?
 6                 THE DEFENDANT:  Yes, I have, Your Honor.
 7                 THE COURT:  Have you discussed it completely with
 8    your attorney, and has he answered all your questions?
 9                 THE DEFENDANT:  Yes, he has, Your Honor.
10                 THE COURT:  Does he make time to see you in his
11    office and take your phone calls when you need to talk to him?
12                 THE DEFENDANT:  He certainly does, Your Honor.
13                 THE COURT:  Are you still satisfied with the advice
14    and efforts of your attorney?
15                 THE DEFENDANT:  Yes, Your Honor.
16                 THE COURT:  And there are no objections -- sorry.
17                 MR. BARROSO:  There was one objection, Your Honor.
18    It was --
19                 THE COURT:  That he would on occasion travel out of
20    the United States to meet with Mexican investors?
21                 MR. BARROSO:  Right.  And he never travelled outside.
22    The meetings were all in the United States.
23                 THE COURT:  Probation?
24                 MS. VOLKMANN:  Your Honor, that was what was reported
25    by two co-conspirators.
```

```
 1                THE COURT:  Ms. Booth?
 2                MS. BOOTH:  Well, Your Honor, our evidence was that
 3   he travelled to Mexico one time, and that he met with them in
 4   St. Martin's --
 5                THE COURT:  You know, why don't we listen to the
 6   plea.
 7                MR. BARROSO:  Your Honor, it --
 8                MS. BOOTH:  It didn't, I don't think it addressed
 9   that in the plea colloquy.
10                THE COURT:  You think not?
11                MS. BOOTH:  I think not, Your Honor.
12                MR. BARROSO:  Your Honor, we'll withdraw the plea,
13   because it doesn't -- it doesn't make a difference.
14                THE COURT:  The plea?
15                MR. BARROSO:  I mean, not the plea, the objection.
16                THE COURT:  Okay.
17                MR. BARROSO:  We're going to withdraw the objection.
18   I talked to Mr. Keiter, and he, he agrees.
19                THE COURT:  Okay.  That's all right with you,
20   Mr. Keiter?
21                THE DEFENDANT:  That is correct, Your Honor.
22                THE COURT:  Are there any mistakes, Mr. Keiter,
23   anywhere in this report?  You're really best situated to tell
24   me.
25                THE DEFENDANT:  No, Your Honor, or none --
```

```
 1              MR. BARROSO:  There's one other matter, Your Honor,
 2   that I need to bring to the Court's attention.  There was
 3   one -- there's a correction to his financial disclosure
 4   statement.  There was one asset that he failed to list, and
 5   that was a time share that he owns, with an approximate value
 6   of about $7500.  I brought it to the attention of Ms. Volkmann
 7   just prior to --
 8              THE COURT:  Is it in there?
 9              MS. VOLKMANN:  Your Honor, he just informed me --
10              THE COURT:  Oh, okay.
11              MS. VOLKMANN:  -- approximately fifteen minutes ago.
12              MR. BARROSO:  No, it's not.  It's not in the --
13         (PAUSE.)
14              THE COURT:  Any other mistakes, Mr. Keiter?
15              THE DEFENDANT:  Your Honor, I've gone through an
16   audit with the Internal Revenue Service for 2003, 2004.  The
17   numbers reflected in the PSI were the initial numbers.  They
18   have since been reduced, but I do not have a final --
19              THE COURT:  Okay.
20              THE DEFENDANT:  -- a final statement from the IRS.
21              THE COURT:  Any objections, Ms. Booth?
22              MS. BOOTH:  No, Your Honor.
23              THE COURT:  All right.  Well, according to the
24   Presentence Investigation Report, the Total Offense Level is
25   27, Criminal History Category I, range of imprisonment 70 to 87
```

1  months, two to three years supervised release range, 12,500 to
2  to 1,700,000 -- I'm sorry -- $1,079,836 fine, a $100 special
3  assessment.  Is that correctly calculated, Mr. Barroso?
4              MR. BARROSO:  It is, Your Honor.
5              THE COURT:  Ms. Booth?
6              MS. BOOTH:  Yes, Your Honor.
7              THE COURT:  What are you recommending?
8              MS. BOOTH:  70 months, Your Honor.
9              THE COURT:  And Mr. Barroso?
10             MR. BARROSO:  We are also recommending 70 months,
11 Your Honor.
12             THE COURT:  Is there anything you'd like to --
13 that's -- I'm not going to give him more than that.
14             Is there anything you'd like to say before sentence
15 is imposed?
16             THE DEFENDANT:  Your Honor, I once proudly served my
17 country in Vietnam.  And I have disgraced that uniform, and
18 I've disgraced my former profession.  I apologize to the Court,
19 to my country, to my family.  And I only hope that this will
20 bring me out to be a better person than I've ever been before.
21 And I thank Your Honor for giving me this opportunity.
22             THE COURT:  Yes, sir, this is -- a felony conviction
23 can be, all by itself --
24             MR. BARROSO:  And he has lost his --
25             THE COURT:  -- an incredible punishment.  You lose

1  your law license, your means of making a livelihood.  They'll
2  probably never -- you'll never get that back.
3              MR. BARROSO:  He has surrendered his license, Your
4  Honor.  That's gone already.
5              THE COURT:  And of course betrayed a profession.
6              I'm going to sentence you to 70 months in the Bureau
7  of Prisons, followed by three years supervised release.
8  Downwardly depart to a $2,000 fine.  A $100 special assessment
9  due and payable on supervised release, that is, fine and
10 special assessment $150 a month, starting 30 days after
11 placement on supervised release until the fine and special
12 assessment are paid in full.
13             Standard terms and conditions of supervision, along
14 with drug surveillance, mental health treatment, access to
15 financial records.
16             You have a right, sir, to appeal the sentence of this
17 Court by filing a written notice of appeal within fourteen days
18 of today's date.  If you cannot afford an attorney, one will be
19 appointed to represent you.  To qualify for court-appointed
20 counsel, you need to fill out a form under oath listing your
21 assets and liabilities.  Do you understand this, sir?
22             THE DEFENDANT:  Yes, I do, Your Honor.
23             MR. BARROSO:  Your Honor, may I ask if the Court
24 would --
25             THE COURT:  Do I have a status report on him, please?

```
 1              Adopt the Presentence Investigation Report, with the
 2   corrections.
 3              MR. BARROSO:  Your Honor, would the Court consider
 4   making a recommendation that he be, if possible, housed at the
 5   Beaumont Bureau of Prisons, in that it's close to his family
 6   and his home in Houston?
 7              THE COURT:  I'll make that recommendation.  Even with
 8   the 70 months, Pretrial Services is recommending that he stay
 9   out on bond under the same terms and conditions, that he's met
10   the release --
11              MR. BARROSO:  We had, I had talked to Ms. Booth --
12              THE COURT:  -- met the terms and conditions.  Go
13   ahead.
14              MS. BOOTH:  And I had told Mr. Barroso that I was
15   going to be, ask that he be taken into custody today.  However,
16   I said that I would make the recommendation that he be able to
17   turn himself in tomorrow in Houston, because of his sleep apnea
18   machine that had to go with him.
19              All of the other defendants, Your Honor, have been --
20   were arrested and have been incarcerated the entire time.
21   And --
22              MR. BARROSO:  And we certainly understood that, and I
23   had made --
24              MS. BOOTH:  That's why --
25              MR. BARROSO:  And I had discussed that with
```

```
 1  Mr. Keiter.  Obviously, it's up to the Court, Your Honor, but
 2  the only thing that I would ask, if the Court is going to
 3  remand him, is that he be able to turn himself in to the
 4  federal detention facility in Houston, because he's under a lot
 5  of medication, and the sleep apnea machine.
 6            And this Court knows that some of these places, like
 7  if he gets into Karnes City or one of these other facilities
 8  out there, you know, he -- I'm afraid he's going to run into
 9  problems with his medication or his machine.  And I know at
10  least at that facility that they've got in Houston, the federal
11  detention facility, because it is a federal facility, they're
12  very good at addressing whatever medical needs he's got.
13            THE COURT:  Well, Ms. Booth, in the long run he's
14  going to do the same time that the rest of them do.
15            MS. BOOTH:  Yes, Your Honor.
16            THE COURT:  And I'm just thinking about the cost to
17  the public if it's not necessary.  And if Pretrial Services
18  says that he's not a flight risk and he keeps showing up, and
19  he may have shamed himself and made all this venture possible
20  and shamed his family, and the profession of which we're all so
21  proud.
22            MS. BOOTH:  Yes.
23            THE COURT:  And I'm not granting him any special
24  favors because he's an attorney, or was an attorney.  I'm just
25  thinking about the costs to the public if it's not necessary to
```

```
 1   incarcerate him at this time.
 2              MS. BOOTH:  Your Honor, it's very rarely that I ask
 3   for someone to be incarcerated.
 4              THE COURT:  I realize that.
 5              MS. BOOTH:  And I'm asking this time.
 6              THE COURT:  Do you think he's a flight risk?
 7              MS. BOOTH:  Your Honor, I don't know.  And --
 8              MR. BARROSO:  We had agreed with Ms. Booth, in all
 9   fairness to -- and I know the Court knows that, we had agreed
10   with Ms. Booth that --
11              THE COURT:  All right.  Then he can turn himself in
12   tomorrow to the federal facility in Houston.  That's the order
13   of the Court.  Anything else?
14              MR. BARROSO:  I don't believe so, Your Honor.  We had
15   filed a motion, or I had filed a motion to withdraw some
16   exhibits in aid of sentencing.
17              THE COURT:  I had a bunch of letters.
18              MR. BARROSO:  Pardon?  Yeah.  And -- is that
19   necessary to -- may I have just a moment, Your Honor?
20              THE COURT:  Yes.
21              MS. BOOTH:  Yes.
22         (Counsel conferring off the record.)
23              MR. BARROSO:  I just had asked that those, all those
24   matters be withdrawn, that I be allowed to withdraw all those
25   exhibits in aid of sentencing, Your Honor.
```

```
 1                THE COURT:  Because?
 2                MR. BARROSO:  Well, I don't think that they -- I
 3   talked to Ms. Booth --
 4                THE COURT:  They're sealed.
 5                MR. BARROSO:  Pardon?
 6                THE COURT:  They're sealed.
 7                MR. BARROSO:  They're sealed?
 8                MS. BOOTH:  They're sealed, Your Honor, but in his
 9   motion, and -- it reflects that they, these letters do not
10   reflect the remorse or they do not reflect his, the, his
11   conduct in the last ten years.
12                THE COURT:  I agree with you 100 percent, but --
13                MS. BOOTH:  And if they're not -- I have witnesses
14   here to dispute those letters.
15                THE COURT:  Let me tell you this --
16                MS. BOOTH:  And I just don't --
17                THE COURT:  -- this is what happens, this is what
18   happens when family members and friends think you deserve a
19   special break.
20                MS. BOOTH:  But -- and possible co-defendants, Your
21   Honor.  There are other ramifications with these documents.
22                THE COURT:  I'm not -- they're not being withdrawn.
23   They're there.  They're sealed.
24                MR. BARROSO:  Okay.
25                MS. BOOTH:  I just don't want them to stand as truth,
```

```
 1   Your Honor.  That's the problem that I have.
 2            MR. BARROSO:  And Your Honor, the reason, one of the
 3   reasons I had asked is because I'm hopeful, we're hopeful that,
 4   you know, Mr. Keiter might, may be used in the future as a
 5   witness for the Government.  And we just want to make sure that
 6   none of that that's in there adversely impacts his --
 7            THE COURT:  Oh, it's there.  And if it adversely
 8   affects, it adversely affects.  It's there.  You can't file it
 9   with the Court and me read it and then say it's gone.  It's
10   over.
11            MR. BARROSO:  That's fine, Your Honor.
12            THE COURT:  Thank you.
13            MR. BARROSO:  I understand.
14            THE COURT:  You're excused.
15            MR. BARROSO:  Thank you, Your Honor.
16            MS. BOOTH:  Oh, Your Honor, the Marshals were
17   requesting time for him to report.
18            THE COURT:  10:00 a.m. tomorrow.
19            MS. VOLKMANN:  Your Honor, just for clarification,
20   on -- adopt the PSI with the additional information that there
21   was a $7500 time share that was not included originally?
22            THE COURT:  Yes, please.
23            MS. VOLKMANN:  And then also, too, Mr. Keiter does
24   have numerous medical problems.  I have his medical records.
25   Does the Court wish that I forward these to BOP?
```

```
 1              THE COURT:  Would you please?
 2              MS. VOLKMANN:  Yes, Your Honor.
 3              THE COURT:  Thank you.
 4              MR. BARROSO:  Thank you, Ms. Volkmann.  Thank you,
 5   Your Honor.
 6              THE COURT:  Thank you very much.  You're excused.
 7              THE DEFENDANT:  Thank you, Your Honor.
 8         (Proceedings concluded at 10:29 a.m.)
 9
10
11
12
13   I, court approved transcriber, certify that the foregoing is a
     correct transcript from the official electronic sound recording
14   of the proceedings in the above-entitled matter.
15
16
17
     /s/ Molly Carter                  August 14, 2013
18   Molly Carter                      Date
19
20
21
22
23
24
25
```